UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JONATHAN W. BACCHIOCCHI, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3:02-cv-1403(JCH) |
| | : | |
| STEVE CHAPMAN, | : | |
| Defendant. | : | JANUARY 26, 2004 |

**RULING ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [DKT. NO. 14]**

Plaintiff, Jonathan Bacchiocchi, alleges claims under 42 U.S.C. § 1983 and 1988, asserting that defendant, Steve Chapman, violated his rights under the Fourth and Eighth Amendments by false arrest, malicious prosecution, using excessive force, and setting excessive bail. Chapman moves for summary judgment, arguing that he is entitled judgment as a matter of law on the false arrest and malicious prosecution claims, absolute immunity on the excessive bail claim, and qualified immunity on the excessive force claim. [Dkt. No. 14]. For the following reasons, the motion is granted in part and denied in part.

**I.   BACKGROUND[1]**

Bacchiocchi, a resident of Derby, Connecticut, is an automobile dealer and has been the owner of Atlantic Motors since 1998. On August 15, 2001, Bacchiocchi was driving a green Buick on Prospect Street when he was spotted by Derby Police Officer Steve Chapman. Chapman later reported in the police report that, "it appeared that the

---

[1]On this motion for summary judgment, the court must accept the plaintiff's version of all disputed facts.

expiration date on the plate had been altered to appear valid" and that "a check with the Department of Motor Vehicles showed there to be no information found for CT temporary 6304." Def.'s Mem. In Supp. Of Summ. J., Ex. A [Dkt. No. 15].

Chapman conducted a motor vehicle stop. After examining the plate more closely, and after looking at identification provided to him by Bacchiocchi, he arrested Bacchiocchi on charges of Alteration of a Marker (§ 14-147a), Mandatory Security (§ 38a-371), Unregistered Motor Vehicle (§ 14-12a), Operating Without a License (§ 14-36), and Improper Display (§ 14-18).

Bacchiocchi tells a different story. He says that the "improper" dealer plate was actually a new dealer plate and that the defendant's story "is a lie." Pl.'s Opp. at 2. He further claims:

> The plaintiff gave the defendant his registration and a copy of his License Restoration Notice. The defendant falsely claimed that the plaintiff's Notice of License Restoration was no good and falsely accused the plaintiff of having made a fake license plate for the car. The defendant, although supposedly a police officer, did not even know that a Temporary Dealer Plate looked like. The plaintiff explained to the defendant that he was mistaken and explained to him that if he would look at his DMV book he would see that the plaintiff's dealer plate was valid. When the plaintiff instructed the defendant in how to ascertain the validity of his dealer plate, the defendant became angry, ordered plaintiff to get out of his car.

Id. at 3.

Bacchiocchi admits that he did not have his license on him, and instead provided the defendant with his registration and a copy of his License Restoration Notice. Pl.'s Ans. To Interr. at ¶ 16, Def. Mem., Ex. B [Dkt. No. 15]. Chapman contends that he judged that

Bacchiocchi's notice of license registration was no good and thought the dealer plate appeared to have been altered, and checked with the DMV, which informed him that there was no information found for the temporary Connecticut number on the vehicle. Bacchiocchi makes a conclusory statement that the plate and registration were valid, but does not submit any evidence to this effect, and provides no attachments at all to either his Opposition or Statement of Disputed Facts.

Chapman handcuffed Bacchiocchi before transporting him to the Derby Police Department.  Bacchiocchi alleges that, when Chapman handcuffed him, he deliberately twisted his arm behind his back "until there was an audible pop." Id.  Bacchiocchi's answers to interrogatories state that he was later treated at Griffin Hospital with pain reducer and anti-inflammatory drugs for his injuries.  Pl.'s Ans. To Def.'s Interrog. And Req. For Prod., Def. Mem. Ex. B [Dkt. No. 15].  Chapman later set bond at $500.  Bacchiocchi's vehicle was towed.

Bacchiocchi pled guilty to a substituted information's charge of Operating Without a License (§ 14-36), and paid a $78 fine.  See Superior Court of Connecticut Disposition Sheet, Def. Mem. Ex. D [Dkt. No. 15].  The original charges were nolled.

## II.    DISCUSSION

### A.    Standard

In evaluating the defendant's motion for summary judgment, including his claim of qualified immunity, the court must construe all facts and draw all reasonable inferences in

the plaintiff's favor.  See Poe v. Leonard, 282 F.2d 123, 126 (2d Cir. 2002).  In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).  The burden of showing that no genuine factual dispute exists rests upon the moving party.  Marvel Characters Inc., 310 F.3d at 286.  Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present such evidence that would allow a jury to find in his favor.  Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought.  Anderson, 477 U.S. at 255; Lucente v. Int'l Business Machines Corp., 310 F.3d 243, 253 (2d Cir. 2002).  "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  Lucente, 310 F.3d at 254.  The court thus accepts the plaintiff's version of all disputed facts in considering this motion for summary judgment.

Bacchiocchi, however, cannot escape summary judgment merely by asserting that unspecified disputed material facts exist or through conjecture or speculation.  Harlen

Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994). Disputed facts that are not material to the issues in the case may not defeat summary judgment. Hemphill v. Schott, 141 F.3d 412, 416 (2d Cir.1998). See also Anderson, 477 U.S. at 247-48 (the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact").

### B. Excessive Force Claim

Chapman seeks summary judgment on Bacchiocchi's excessive force claim on the ground of qualified immunity. In considering the defendant's claim of qualified immunity, the court must first consider the "threshold question" of whether the facts, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the conduct did violate such a right, then the court must consider whether that right was clearly established at the time of the violation, or whether the officer's conduct was objectively reasonable. Id. at 205.

#### 1. Constitutional Violation

"[W]hen . . . the excessive force claims arise in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 394 (1989).

See also Tennessee v. Garner, 471 U.S. 1, 7 (1985) (there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment).

Determining whether the force used to affect a particular seizure is "reasonable" under the Fourth Amendment requires a "careful balancing of the nature and quality of the individual's Fourth Amendment interest against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. Reasonableness is judged from the perspective of a "reasonable officer on the scene," not in hindsight. Id. It depends on factors specific to each particular case, like (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. Id. at 397. In the circumstances of this case, which involves whether an officer used excessive force in self-defense, the "immediate threat" criterion controls the court's evaluation. Salim v. Proulx, 93 F.3d 86, 91 (2d Cir. 1996). "Not every push or shove" is excessive. Mickle v. Morin, 297 F.3d 114, 120 (2d Cir. 2002) (quoting Graham, 490 U.S. at 396).

According to Bacchiocchi, "the defendant ordered the plaintiff to get out of his car, pushed him up against the car and twisted his arm until there was an audible 'pop' and used unnecessary and excessive force on the plaintiff." Pl.'s Opp. at 3. On this version of the facts, where the plaintiff is not resisting and had not otherwise evidenced that he was a threat, "twisting" the plaintiff's arm "until there was an audible 'pop'" is not a reasonable

use of force. This testimony, if believed, could support a jury finding of a constitutional violation.

### 2.    Qualified Immunity

After determining whether, considering the record as construed in the plaintiff's favor, a jury could reasonable conclude that a constitutional violation occurred, the court must then examine whether the defendant is nonetheless entitled to qualified immunity. A government official sued in his individual capacity is entitled to qualified immunity for a constitutional violation if the constitutional right in question was not "clearly established" at the time of the conduct, or if the official's action was objectively reasonable. See Saucier, 533 U.S. at 201; X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 65-66 (2d Cir. 1999). The question is "what a reasonable person in the defendant's position should know about the constitutionality of the conduct." McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 278 (2d Cir. 1999)(citation omitted). In other words, "the unlawfulness [of the conduct] must be apparent" before the court will deny an officer's qualified immunity defense. Id.

"The right to be free from 'excessively forceful handcuffing' is a clearly established right for qualified immunity purposes." Burchett v. Kiefer, 310 F.3d 937, 945 (6th Cir. 2002) (citing Kostrzewa v. City of Troy, 247 F.3d 633 (6th Cir. 2001)(using handcuffs that were too small for non-violent, non-resisting arrestee's wrists)). This has long been the law in this circuit. See, e.g., Robinson v. Via, 821 F.2d 913, 925 (2d Cir. 1987)(finding

plaintiff's statement that officer pushed plaintiff against the inside of the door of her car, "yanked" her out, "threw [her] up against the fender," and "twisted [her] arm behind [her] back," causing plaintiff to suffer bruises lasting a "couple weeks" sufficient to preclude summary judgment). It was also established that a "poke and push" during a traffic stop could be actionable. Lanigan v. Village of East Hazel Crest, 110 F.3d 467 (7th Cir. 1997).

"[T]he objective reasonableness of a given amount of force depends on the circumstances." Mickle v. Morin, 297 F.3d 114, 122 (2d Cir. 2002). Under the facts as claimed by the plaintiff, reasonable officers would not disagree about the appropriateness of the defendant's conduct. Rather, pushing a (as Bacchiocchi alleges) compliant and unresisting motorist up against his car, and twisting his arm until there is an "audible pop," is not reasonable and precludes summary judgment on the basis of qualified immunity. See Robinson, 821 F.2d at 925. Of course, the jury may not credit Bacchiocchi's testimony, and may determine that no constitutional violation has occurred. However, if the jury determines that the plaintiff's version of the facts is accurate, those facts are sufficient to find a constitutional violation has occurred, and that Chapman is not entitled to qualified immunity.

### C. Malicious Prosecution Claim

Chapman also seeks summary judgment as a matter of law on Bacchiocchi's malicious prosecution claim. In order to demonstrate a cause of action for malicious prosecution, Bacchiocchi must show that the proceeding was terminated in his favor. See

Singleton v. City of New York, 632 F.2d 185, 194-95 (2d Cir. 1980).  This favorable termination of the criminal proceedings is an essential element of the malicious prosecution claim.  Pinaud v. County of Suffolk, 52 F.3d 1139, 1154 (2d Cir. 1995); Roesch v. Otarola, 980 F.2d 850 (2d Cir. 1992). "Proceedings are terminated in the accused's favor only when their final disposition is such as to indicate that the accused is not guilty." Konon v. Formal, 612 F. Supp. 68, 70 (D.Conn. 1985).

Bacchiocchi admits that he pled guilty to the charge of failure to carry a license in violation of Conn. Gen. Stat. § 14-213, and that the other charges were nolled.  See Pl.'s Local Rule 56(a)2 Statement at ¶¶ 18, 19 [Dkt. No. 18].  The disposition sheet from the Superior Court indicates the original counts were nolled because a second information was substituted, to which Bacchiocchi pled guilty.  See Def.'s Rule 9(c) Statement of Facts, Ex. E, F [Dkt. No. 16].  Bacchiocchi does not attach any exhibits to either his Opposition or his Rule 56(a)(2) Statement, and does not contend that the documents submitted by Chapman are somehow incorrect or misleading.  Instead, he relies on the fact that the initial charges were "nolled" as evidence that they were terminated in his favor.

A "nolled" prosecution is not a favorable termination of the type required for a malicious prosecution claim.  Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003).  Instead, Connecticut case law explicitly defines a "nolle" as "a unilateral act by a prosecutor, which ends the 'pending proceedings without an acquittal and without placing the defendant in jeopardy," unlike a dismissal, which "is an act of court." Cislo v.

City of Shelton, 240 Conn. 590, 599 n. 9 (Conn. 1997) (quoting State v. Lloyd, 185 Conn. 199, 201 (Conn. 1981)).  A nolle requires no findings of fact to determine the accuracy of the charges.  Lloyd, 185 Conn. at 201.  And, when a nolle is entered, the defendant has the right to object to the nolle and to instead demand a trial or dismissal.  Conn. Gen. Stat. § 54-56b.  "A person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim."  Roesch v. Otorala, 980 F.2d 850, 853 (2d Cir. 1992).

The nolle as applied to the malicious prosecution charge in this case is analogous to New York's "Adjudication in Contemplation of Dismissal," which the Second Circuit found in Singleton was not a termination in the defendant's favor.  Singleton, 632 F.2d at 193-94.  The New York adjudication discussed in Singleton begins as an "adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice."  Id.  Within the next six months after the adjournment, "upon application of the people . . . the court must restore the case to the calendar and the action must thereupon proceed."  If the action is not restored within six months, the action is deemed "dismissed within the interests of justice."  Id. at 188 n.1 (quoting N.Y. Crim. Proc. Law. § 170.55).  The nolle of this case is similar, but with the even longer window of thirteen months before the charges are deemed dismissed.

Additionally, the facts here cannot support the conclusion that the nolle was on the

merits and indicated Bacchiocchi's innocence. Here, the nolle Bacchiocchi relies on came because of a filing of a substituted information to which he pled guilty on this related charge. The alteration of charges as part of a plea taken on the same day is not a termination in Bacchiocchi's favor nor does it suggest innocence. See, e.g., Pinaud, 52 F.3d at 1154.

### D.    False Arrest Claim

Chapman also moves for summary judgment on Bacchiocchi's false arrest claim as a matter of law. Chapman argues that in order to prevail on his false arrest claim, Bacchiocchi must also show that the proceedings were terminated in his favor. The Second Circuit has held that a "Section 1983 claim which is grounded in false arrest does not arise (in some circumstances) until such time as a criminal proceeding has been terminated in [Bacchiocchi's] favor." Covington v. City of New York, 171 F.3d 117, 123 (2d Cir. 1999). In Woods v. Candela, 47 F.3d 545 (2d. Cir. 1995), the court followed the rule announced in Heck v. Humphrey, 512 U.S. 477 (1994), and applied it to Wood's action for false arrest and other violations of his constitutional rights, as it had been directed to do on remand from the Supreme Court. Woods v. Candela, 513 U.S. 801 (1994). The Woods court determined that Wood could not maintain his false arrest action because he had been convicted on some charges. Again following Heck, the court "exempted from this rule actions that even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful," id. (quoting Heck, 512 U.S. at 487 n. 7 (emphasis in original)), "such as an

action founded on an unlawful search whose illegality would not affect the validity of the conviction." Id.

Lower courts in this circuit have generally interpreted this decision as establishing a rule that, to pursue a false arrest claim, the associated proceeding must have terminated in the plaintiff's favor, see Birdsall, 249 F. Supp. 2d at 171, though the inquiry as to what suffices for favorable termination is somewhat fact-specific. See Colon v. Ludemann, 283 F. Supp. 2d 747, 753-54 (D.Conn. 2003) (citing cases). In any case, it is also well-established that a conviction is conclusive proof of probable cause to arrest. See Haynes v. City of New London, 99:CV2551, 2002 U.S. Dist. LEXIS 10366, *4-6 (D.Conn. May 17, 2002); Sabir v. Jowett, 214 F. Supp. 2d 226, 241 (D.Conn. 2002).

Here, Bacchiocchi admits that he did not have his license on him, and that he instead provided the defendant with his registration and a copy of his "License Restoration Notice." Pl.'s Ans. To Interr. at ¶ 16, Def. Mem., Ex. B [Dkt. No. 15]. Chapman argues that Bacchiocchi's notice of license registration was no good and that he checked with the DMV about the dealer plate, which appeared to have been altered; he claims that the DMV informed him that there was no information found for the temporary Connecticut number on the vehicle. Bacchiocchi makes a conclusory statement that the plate and registration were valid, but does not submit copies of the disputed instruments, or any other evidence to support this claim. He cannot escape summary judgment through mere conjecture. Harlen, 273 F.3d at 499.

Bacchiocchi eventually entered a guilty plea on a substituted information, pleading to "failure to carry license" in violation of Conn. Gen. Stat. § 14-213. This substituted charge was related to, albeit lesser than, the charges for which he was originally arrested, and was entered on the same day that the other charges were nolled. See Haynes, 99:CV2551, 2002 U.S. Dist. LEXIS 10366 at *4-6 (nolle insufficient to imply plea bargain where charges nolled almost a year after initial plea). As discussed above, this was not a termination in Bacchiocchi's favor. Indeed, it was an adverse determination, though the charge of conviction was substituted for the original charges. As a result, Bacchiocchi cannot maintain his action for false arrest.

### E. Excessive Bail Claim

Finally, Chapman argues that he is entitled to absolute immunity from Bacchiocchi's claim that the defendant set his bail at an excessive level in violation of Bacchiocchi's Eighth Amendment rights. Another court of this district recently addressed this issue in Sanchez v. Doyle, 254 F. Supp. 2d 266 (D.Conn. 2003). The Sanchez court noted sua sponte that another Connecticut police officer was "absolutely immune from personal-capacity suits for monetary damages under 42 U.S.C. § 1983 for actions related to performing the bail setting function assigned to police officers under Conn. Gen. Stat. § 54-63c." Id. at 270.

Officials acting in a judicial capacity are entitled to absolute immunity against § 1983 claims arising from their actions. See Montero v. Travis, 171 F.3d 757, 760 (2d Cir.

1999). This "functional" inquiry focuses on the function performed, not on the person who performs it. Forrester v. White, 484 U.S. 219, 224 (1988). The setting of bail is "plainly [a] judicial act[]." Tucker v. Outwater, 118 F.3d 930, 933 (2d Cir. 1997). Bacchiocchi does not allege that Chapman acted outside his jurisdiction, but rather that he set bail at an excessive level. Such a claim is at the heart of what is protected by judicial immunity. "[A] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." Tucker, 118 F.3d at 933.

Nor was it in "clear absence of all jurisdiction." Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356-57 (1978)). Indeed, the act was within Chapman's express authority to set bail as conferred by Conn. Gen. Stat. § 54-63c. Under these circumstances, the defendant is entitled to absolute immunity. See Sanchez, 254 F. Supp. 2d at 273.

### III.   CONCLUSION

For all the reasons discussed above, the defendant's Motion for Summary Judgment is GRANTED as to the false arrest, excessive bail, and malicious prosecution claims, and DENIED as to the excessive force claim.

**SO ORDERED.**

Dated this 26th day of January, 2004, at Bridgeport, Connecticut.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge